IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| | : | |
| v. | : | No. 19-474 |
| | : | |
| AYENDE ALVARADO | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                     **May 18, 2020**

Defendant Ayende Alvarado, who is currently detained pending trial on gun charges, moves for pretrial release in light of the ongoing novel coronavirus 2019 (COVID-19) pandemic. At a July 29, 2019, hearing, Alvarado stipulated to pretrial detention before United States Magistrate Judge Thomas J. Rueter and has been detained since. He now argues changed circumstances warrant his temporary release pursuant to 18 U.S.C. § 3142(i). Specifically, Alvarado argues a compelling reason warrants his temporary release because his medical condition as a smoker places him at an increased risk for serious illness due to COVID-19. He also argues temporary release is necessary for the preparation of his defense. Because Alvarado has failed to show he should be released for a compelling reason or for the preparation of his defense, the Court will deny his motion.

## BACKGROUND

Alvarado is charged with three counts arising out of his possession of guns. According to the Superseding Indictment, Alvarado is charged with Count 1 – possession of a machine gun, in violation of 18 U.S.C. § 922(o), Count 2 – possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and Count 3 – possession of an unregistered firearm, in violation of 26 U.S.C. § 5845(b). After his arrest on July 29, 2019, Judge Reuter held a hearing and Alvarado stipulated

to pretrial detention. Alvarado has been detained at the Federal Detention Center in Philadelphia, Pennsylvania (FDC Philadelphia) since.

Since Alvarado's arrest and detention order, COVID-19, a novel and highly contagious respiratory virus has spread across Pennsylvania (and the world). This rapidly changing public health crisis has reached the scale of a global pandemic. *See WHO characterizes COVID-19 as a pandemic*, World Health Org. (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Watch for symptoms*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited May 18, 2020). To date, the virus has infected nearly 1,467,065 people in the United States and resulted in 88,709 deaths. *See Cases of Coronavirus Disease (COVID-19) in the U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated May 17, 2020). In Pennsylvania, there are 62,234 confirmed cases and 4,418 reported deaths. *See COVID-19 Data for Pennsylvania*, Pa. Dep't of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Coronavirus.aspx (last updated May 17, 2020, 12:00 PM).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People Who Are At Higher Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 18, 2020). High risk underlying medical conditions include chronic lung disease,

asthma, serious heart conditions, severe obesity, diabetes, chronic kidney disease undergoing dialysis, liver disease, and immunocompromised conditions from cancer treatment, smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id.*

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In Pennsylvania, like in many other states, individuals have been directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Nonessential businesses have closed their doors, schools have closed for the rest of the academic year, and people are avoiding gatherings of any kind. In this district, the Court has taken significant steps to limit operations to prevent the spread of the virus.

In light of the precautions necessary to prevent the virus's spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Mar. 23, 2020). Nevertheless, in response to the COVID-19 pandemic, the Bureau of Prisons[1] (BOP) has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP*

---

[1] The Bureau of Prisons operates FDC Philadelphia.

*Implementing        Modified        Operations*,        Fed.        Bureau        of        Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 18, 2020).

Legal visits and inmate access to legal counsel is a paramount requirement in the BOP. However, due to the need to mitigate the risk of exposure created by external visitors, the BOP and FDC Philadelphia suspended all legal visits on March 13, 2020. The BOP allows case-by-case accommodations for in-person legal visits and confidential legal calls to ensure inmates access to legal counsel. Alvarado's attorney has not met with him in person since at least March 13, 2020.

Although COVID-19 appears to be spreading in the community, as of May 18, 2020, there has only been one positive case of COVID-19 among inmates at FDC Philadelphia.[2] On May 13, 2020, FDC Philadelphia reported a transferred inmate tested positive for COVID-19 on April 11, 2020, while at another facility. *See* Letter Update, May 13, 2020, ECF No. 47, *Brown v. Marler*, No. 20-1914 (E.D. Pa. filed Apr. 15, 2020). The inmate arrived at FDC Philadelphia on April 15, 2020, but neither presented symptoms of COVID-19 nor informed anyone of the test. *See id.* Pursuant to current procedures, the inmate was quarantined for 14 days and did not exhibit symptoms during that time. The inmate was released to the general population on April 30, 2020. The inmate's quarantine cellmate has been identified, although, the cellmate has remained asymptomatic since last sharing the quarantine cell. The inquiry into this case is ongoing.

Also, after one female inmate presented symptoms consistent with COVID-19, she tested negative for the virus. No other inmate has presented any known symptoms of COVID-19 nor required testing.

---

[2] Under current protocol, the BOP tests inmates if and when they present symptoms of COVID-19. *See BOP Expands COVID-19 Testing*, Fed. Bureau of Prisons, https://www.bop.gov/resources/news/20200424_expanded_testing.jsp (last updated Apr. 24, 2020).

On April 30, 2020, the Warden of FDC Philadelphia reported one staff member tested positive for COVID-19. The staff member has not been in the institution since April 12, 2020; however, FDC Philadelphia did not receive confirmation of the positive test until late April 29, 2020. On May 1, and May 5, 2020, a second and third staff member tested positive for COVID-19. *See* Letter Update, May 5, 2020, ECF No. 41, *Brown v. Marler*, No. 20-1914 (E.D. Pa. filed Apr. 15, 2020). According to reports, FDC Philadelphia is following and implementing all best practices and guidelines for sanitation and prevention of spreading the virus.

On May 1, 2020, Alvarado filed the instant motion for temporary release from custody. Considering the changed circumstances created by COVID-19 since his pretrial detention hearing, Alvarado argues his high-risk condition as a smoker is a compelling reason for his release. He also argues his release is necessary for the preparation of his defense. The Government opposes the motion. The Court held a teleconference amongst the parties on May 4, 2020, during which Alvarado represented to the Court that he relies on the allegations in his motion and did not intend to present further evidence for the Court's consideration. As a result, a hearing on the motion was not necessary. The Court will thus address the motion based on the parties' briefing.

**DISCUSSION**

The Court will deny Alvarado's motion because COVID-19 is not a compelling reason for his release and he has not shown his release is necessary for the preparation of his defense. Because Alvarado has already stipulated to pretrial detention, he now seeks temporary release under the Bail Reform Act.[3] Pursuant to 18 U.S.C. § 3142(i), a court may temporarily release a person for a

---

[3] Neither party discusses whether pretrial detention is appropriate pursuant to a finding that Alvarado is a danger to the community or a flight risk. *See* 18 U.S.C. 3142(e). For purposes of this motion, the Court assumes Alvarado's original stipulation to pretrial detention effectively conceded he was either a danger to the community or a flight risk. However, because the parties agreed a hearing was not necessary on this motion, the Court does not make findings as to

"compelling reason," or "to the extent the [court] determines such release to be necessary for preparation of the person's defense."

Contrary to Alvarado's contention, the COVID-19 pandemic and his current health condition is not a compelling reason warranting his release. The existence of the virus alone does not warrant the release of a pretrial detainee. *See United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused."); *cf. United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, even considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). And, at this time, Alvarado is not at an increased risk of contracting the virus. *See United States v. Krohn*, No. 18-0391, 2020 WL 2217265 at *3 (M.D. Pa. May 7, 2020) ("[A] defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation.").

Alvarado argues he is 39 years old and a chronic smoker placing him at a higher risk for severe illness should he contract COVID-19. *See* Def.'s Ex. A. Even as a chronic smoker, Alvarado's health condition is stable as he has provided no evidence that he is currently suffering from any respiratory symptoms. Also, despite his characterization of the conditions at FDC Philadelphia, the BOP has continually monitored and implemented measures in response to COVID-19 to protect inmates, staff, visitors, and members of the public.

---

Alvarado's dangerousness or flight risk after a hearing pursuant to 18 U.S.C. § 3142(f). The Court thus only addresses whether Alvarado's temporary release is necessary for the preparation of his defense or for a compelling reason pursuant to 18 U.S.C. § 3142(i). Therefore, this Memorandum addressing § 3142(i) does not foreclose Alvarado from appealing his original detention order due to lack of dangerousness or flight risk pursuant to 18 U.S.C. § 3145(b).

The Court recognizes the CDC has identified chronic smokers as a high-risk population, however, in light of Alvarado's condition and the circumstances of his detention at FDC Philadelphia, his concerns at this time are speculative. As a result, Alvarado's concerns regarding COVID-19 and his condition as a chronic smoker do not present a compelling reason to release him at this time. *See United States v. Wood*, No. 19-20216-5, 2020 WL 2131825, at *4 (E.D. Mich. May 5, 2020) (denying motion for pretrial release pursuant to 18 U.S.C. § 3142(i) based on COVID-19 and concerns regarding defendant's health condition as a chronic smoker).

The Court also concludes Alvarado's release is not necessary for the preparation of his defense. "At a minimum, detained defendants seeking temporary release under section 3142(i) for 'necessary' trial preparations must show why less drastic measures—such as requests to continue the trial date (consistent with the Speedy Trial Act) or alternative means of communication (including in writing or by available remote conferences)—would be inadequate for their specific defense needs." *United States v. Coggins*, No. 20-33, 2020 WL 2217259, at *6 (M.D. Pa. May 7, 2020) (citations omitted). Although FDC Philadelphia has suspended all legal visits since March 13, 2020, considering the measures necessary for the BOP to prevent spread of COVID-19 in its institutions, the suspension of legal visits is reasonable. *See United States v. Landji*, No. 18-601, 2020 WL 1674070, at *6 (S.D.N.Y. Apr. 5, 2020) ("[The court] cannot find that BOP's decision to suspend all legal visits for 30 days is unreasonable in light of the global pandemic and the threat it poses to inmates, residents of New York City, and the nation at large."). Even without in-person visits, the BOP offers case-by-case approval for legal visits and ensures confidential legal calls are available to inmates to preserve the right to counsel. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited May 18, 2020).

There is no evidence suggesting Alvarado's attorney cannot apply for a case-by-case approval for an in-person visit or cannot consult with Alvarado over the phone. *See Deshields*, 2020 WL 2025377, at *7 (finding release was not necessary for defendant's defense because he had access to video conferences and phone calls with attorney). Also, there is no evidence Alvarado's need to consult with counsel in-person is urgent considering his trial is continued until July 13, 2020, will likely be continued again, and he is evaluating whether to seek a non-trial resolution of his case. *See United States v. Veras*, No. 19-10, 2020 WL 1675975, at *7 (M.D. Pa. Apr. 6, 2020) ("[The defendant] has not suggested that his situation with regard to consultation with counsel is an urgent one or otherwise distinguishable from that facing other pretrial detainees at this time."). With Alvarado's trial date continued and the availability of alternative means of communication with his attorney, the Court concludes Alvarado's release is not necessary for the preparation of his defense at this time. *See Coggins*, 2020 WL 2217259, at *6 (denying motion for pretrial release for preparation of defendant's defense because defendant failed to show the prison did not allow for attorney-client visits by teleconference or phone).

**CONCLUSION**

In conclusion, Alvarado has failed to show he should be released for a compelling reason or for the preparation of his defense. Alvarado's generalized concern regarding COVID-19 and his concerns as a chronic smoker do not constitute a compelling reason for his release. Also, because Alvarado has not shown he cannot consult with his counsel by alternative means of communication, his release is not necessary for the preparation of his defense at this time. Nevertheless, the circumstances surrounding COVID-19 and medical conditions change frequently, and Alvarado may reassert his motion at a later time should such changes warrant doing so. Accordingly, Alvarado's motion will be denied without prejudice.

An appropriate order follows.

BY THE COURT:


 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.